UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| ROMAN C. MARTIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; AND DANIELLE M. FREIRE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;<br><br>             Plaintiffs,<br><br>    vs.<br><br>ISLAND PALM COMMUNITIES, LLC, DOE DEFENDANTS 1-20,<br><br>             Defendants. | CIV. NO. 24-00006 LEK-KJM |

**<u>ORDER DENYING PLAINTIFFS' MOTION FOR AN ORDER OF REMAND</u>**

On February 5, 2024, Plaintiffs Roman C. Martin ("Martin") and Danielle M. Freire ("Freire" and collectively "the Martins") filed their Motion for an Order of Remand ("Motion"). [Dkt. no. 11.] Defendant Island Palm Communities, LLC ("Island Palm") filed its memorandum in opposition on March 8, 2024, and the Martins filed their reply memorandum on March 15, 2024. [Dkt. nos. 14, 15.] This matter came on for hearing on March 29, 2024.[1] The Martins' Motion is hereby denied

---

[1] The Martins' Motion was heard with the Motion for an Order of Remand filed by Plaintiffs Lonnie G. Jabour and Sonia M. Jabour on February 5, 2024. <u>See</u> <u>Jabour et al. v. Hickam Cmtys., LLC</u>, CV 24-00001 LEK-KJM, dkt. no. 11. That motion is addressed in a separate order.

because the case was properly removed based on diversity jurisdiction.

**BACKGROUND**

The Martins filed their Complaint in the State of Hawai`i Circuit Court of the First Circuit ("state court") on November 17, 2023, and Island Palm removed the case to this district court on January 4, 2024. [Notice of Removal, filed 1/4/24 (dkt. no. 1), Exh. A (Complaint).]

The Martins resided in a rental housing unit that "was owned, operated, managed and/or leased by" Island Palm. [Complaint at ¶¶ 5-6.] According to the Complaint, Island Palm is a Hawai`i limited liability company ("LLC"). [Id. at ¶ 7.] Island Palm "manage[s] and lease[s] residential housing in the City & County of Honolulu, Hawai`i pursuant to agreements with" the United States Department of the Navy ("the Navy"). [Id. at ¶ 31.] These agreements are part of

> a public-private venture to make productive use of residential housing previously utilized as a military housing community. Under the public-private venture, federal lands are leased to Defendants who then lease residences to private consumers, including the Plaintiffs. The public-private venture also includes the sourcing of potable water sources from a Navy-operated water system to Defendants' control.

[Id. at ¶ 32.] Under the leases that it entered into with its tenants, Island Palm had a duty to provide potable water to the

tenants, and the tenants had the duty to pay for the utilities included with their leased homes. [Id. at ¶¶ 33-34.]

The Martins argue fuel spills and/or leaks at the Red Hill Bulk Fuel Storage Facility ("Red Hill"), which is owned and operated by the Navy, contaminated the water that Island Palm sold to them as part of the utilities included in the leases of their homes. See id. at ¶ 4. The Martins allege that, because of the contamination of the water, they "have been constructively evicted from their homes, had personal property contaminated and ruined, and/or suffered physical harm due to exposure to contaminated water." [Id.]

On November 20, 2021, the Navy reported that almost 14,000 gallons of a mixture of fuel and water was released from Red Hill's fire suppression system. [Id. at ¶ 26.] The State of Hawai`i Department of Health ("DOH") found that "the November 2021 fuel release 'caused the Red Hill Shaft, a drinking-water source for the U.S. military, to be seriously contaminated with fuel.'" [Id. at ¶ 26 & n.19 (emphasis omitted) (quoting DOH Hearings Officer's Proposed Decision and Order, Findings of Fact, and Conclusions of Law, dated 12/27/21 ("12/27/21 DOH FOF/COL") at ¶ 36).[2]] The DOH found that "'[t]he water

---

[2] The 12/27/21 DOH FOF/COL was issued in the contested case brought by the Navy to challenge portions of DOH's December 6, 2021 emergency order. The proposed decision and order was

(. . . continued)

3

contamination was widespread and not unique to any one person.'" [Id. at ¶ 27.a (emphasis omitted).] In response to the November 2021 fuel release, the Red Hill Shaft, all tanks at Red Hill, the `Aiea-Hālawa Shaft, and three City and County of Honolulu Board of Water Supply wells were shut down. [Id. at ¶ 29.]

The Martins argue that, because of prior fuel leaks/releases at Red Hill and because of Island Palm's relationship with the Navy, Island Palm knew or should have known about the risk of contamination to the water that Island Palm provided to the Martins under their lease. Further, Island Palm failed to warn the Martins about the risk that fuel leaks contaminated the water provided to their home. Island Palm did not test the water it provided to the Martins to determine whether the water needed to be treated and/or replaced. Even after the November 2021 fuel spill, Island Palm failed to warn its tenants in timely manner, which resulted in the Martins using and drinking the contaminated water. [Id. at ¶¶ 36-37.] The Martins allege the water crisis is ongoing because the water is still being tested to determine if it is safe for human

---

adopted, as amended, as DOH's final decision and order. See Wai Ola Alliance et al. v. U.S. Dep't of the Navy et al., CV 22-00272 LEK-RT ("Wai Ola"), Amended Unopposed Request for Judicial Notice in Support of Motion to Dismiss or, in the Alternative, Stay Proceedings (ECF No. 90), filed 12/7/23 (dkt. no. 102), Exh. D (12/6/21 emergency order), Exh. E (DOH final decision and order); Wai Ola, the plaintiffs' request for judicial notice, filed 12/22/23 (dkt. no. 108), Exh. A (12/27/21 DOH FOF/COL).

consumption. [Id. at ¶ 38.] The Martins allege that, as a result of Island Palm's conduct, they have "suffered economic injury and damages, including but not limited to lease termination fees, relocation expenses, rent, and the loss of personal possessions." [Id. at ¶ 41.] In addition, the Martins allege their damages "include but are not limited to overpayment for rent, real estate sales commissions, renter's insurance policies, personal injuries not requiring medical intervention, damage to personal property, and property management and maintenance services." Id. at ¶ 53; see also id. at ¶¶ 100, 112 (similar).

The Martins are attempting to pursue their case as a class action brought on behalf of:

> All persons who, on or after November 20, 2021, reside or have resided in a housing unit entitled to receive uncontaminated potable water sold or distributed by [Island Palm] in housing units owned, leased or operated by Island Palm and who, for some period of time since November 20, 2021, did not receive such uncontaminated potable water [("the Class")].

[Id. at ¶ 11.] The Class does not include "[i]ndividuals suffering from physical injuries severe enough to require professional medical assistance." [Id.] The Martins also propose a subclass consisting of: "All persons in the above Class who entered a lease contract with Defendant Island Palm, and/or made payments for or towards lease rent on a housing unit entitled to

receive uncontaminated potable water sold or distributed by
Defendant Island Palm [('the Subclass')]." [Id. at ¶ 12.]

        The Martins allege the requirements of numerosity,
commonality, typicality, and adequacy are met as to the Class
and the Subclass. See id. at ¶¶ 13-16. They also allege Island
Palm's conduct is generally applicable to the Class and the
common issues related to liability and causation dominate over
the individual issues of extent of economic harm. See id. at
¶¶ 17-19.

        The Martins assert the following claims: a negligence
claim by the Class ("Count I"); a strict liability claim by the
Class ("Count II"); a claim by the Class alleging Island Palm
has a duty to provide medical monitoring for conditions that may
develop because of the contaminated water ("Count III"); a
private nuisance claim by the Class ("Count IV"); an unfair and
deceptive trade practices claim by the Subclass, pursuant to
Hawai`i Revised Statutes Section 480-2 ("Count V"); a breach of
the implied warranty of habitability claim by the Subclass
("Count VI"); a trespass claim by the Subclass ("Count VII"); a
breach of contract claim by the Subclass ("Count VIII"); and a
claim by the Subclass alleging violations of the Landlord Tenant
Code, Hawai`i Revised Statutes Chapter 521 ("Count XI"). [Id. at
pgs. 16-29.] The Martins seek: class and subclass certification;
general, special, and consequential damages, as well as treble

and punitive damages; a medical monitoring program; attorneys'
fees and costs; disgorgement of profits; prejudgment interest;
injunctive relief; and any other appropriate relief. [Id. at
pgs. 30-31.]

Island Palm removed this case, arguing jurisdiction
exists pursuant to: Title 28 United States Code Section 1332(a);
the Class Action Fairness Act of 2005 ("CAFA"), Title 28 United
States Code Section 1332(d); and the federal officer removal
statute, Title 28 United States Code Section 1442. [Notice of
Removal at § III.] Island Palm argues: 1) there is diversity of
citizenship between the Martins and Island Palm, and the amount
in controversy exceeds $75,000; 2) there is minimal diversity
between the Class and Island Palm, there are more than 100
members in the Class, and the aggregate amount in controversy
exceeds $5 million; and 3) Island Palm was acting under a
federal officer, i.e., the Navy. [Id. at pgs. 4-21.]

In the instant Motion, the Martins argue that the case
must be remanded because neither diversity jurisdiction, CAFA
jurisdiction, nor federal officer removal jurisdiction exists in
this case. [Motion at PageID.260.] As to diversity jurisdiction,
the Martins argue Island Palm has not established that the
amount in controversy exceeds $75,000 as to each plaintiff, and
the separate plaintiffs' claims cannot be aggregated to satisfy
the amount in controversy. [Motion, Mem. in Supp. at 5-6

7

(quoting Urbino v. Orkin Servs. of Cal., 726 F.3d 1118, 1122
(9th Cir. 2013) (quoting Snyder v. Harris, 394 U.S. 332, 335, 89
S. Ct. 1053, 22 L. Ed. 2d 319 (1969)).] The Martins argue
jurisdiction does not exist under CAFA because the home state
exception applies. Further, if this Court is not persuaded that
the home state exception applies, the Martins should be
permitted to conduct jurisdictional discovery on the issue. [Id.
at 14-22.] Finally, the Martins argue that, under Lake v. Ohana
Military Communities, LLC, 14 F.4th 933 (9th Cir. 2021), Island
Palm cannot show that it is a federal officer for purposes of
federal officer removal jurisdiction. The Martins also point out
that other district judges have applied the Lake analysis and
rejected federal officer removal arguments in similar Red Hill
cases. [Id. at 22-23 (citing Lethgo v. CP IV Waterfront, LLC,
No. 22-00052 JAO-WRP, 2022 U.S. Dist. LEXIS 107381, at *16 (D.
Haw. June 16, 2022)).[3] The Martins therefore urge this Court to
deny the Motion and to remand the case to the state court. In
the alternative, they ask this Court to defer ruling on the
Motion until after they have had the opportunity to conduct
jurisdictional discovery. [Id. at 24.]

---

[3] Lethgo, 2022 U.S. Dist. LEXIS 107381, is also available at
2022 WL 2177125.

**STANDARDS**

"A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court, if the case could have been brought there originally." Martin v. Franklin Capital Corp., 546 U.S. 132, 134 (2005); see also 28 U.S.C. § 1441(a).

> "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." Stock W., Inc. v. Confederated Tribes of the Colville Rsrv., 873 F.2d 1221, 1225 (9th Cir. 1989). "Removal and subject matter jurisdiction statutes are 'strictly construed . . . .'" Hawaii ex rel. Louie v. HSBC Bank Nev., N.A., 761 F.3d 1027, 1034 (9th Cir. 2014) (quoting Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1034 (9th Cir. 2008)).
>
> Generally, a "defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." Id. (quoting Luther, 533 F.3d at 1034). . . .

Lake v. Ohana Mil. Cmtys., LLC, 14 F.4th 993, 1000 (9th Cir. 2021) (first ellipsis in Lake).

## I.   Diversity Jurisdiction and CAFA

One such basis for removal is diversity jurisdiction, and one of the circumstances where diversity jurisdiction exists is a suit between citizens of different states where the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1). In addition, "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class

has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)). Relevant to the instant case, minimal diversity means "any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2)(A).

> [T]here "is no antiremoval presumption attend[ing] cases invoking CAFA . . . ." , Dart Cherokee Basin Operating Co., LLC v. Owens (Dart Cherokee), 574 U.S. 81, 89 (2014) (citing S. Rep. No. 109-14, at 43 (2005)), given that such a presumption would cut against "CAFA's primary objective: ensuring Federal court consideration of interstate cases of national importance." Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 595 (2013) (internal citation omitted).
>
> Nevertheless, removal still requires that the moving party carry "the burden of establishing removal." Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006). . . .

Dunn v. SHC Servs., Inc., Case No. 1:21-cv-00744-NONE-SAB, 2021 WL 5122057, at *2 (E.D. Cal. Nov. 4, 2021) (some alterations in Dunn).

## II.  Federal Officer Removal Jurisdiction

Title 28 United States Code Section 1442(a) states, in pertinent part:

> A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the

10

district and division embracing the place wherein
it is pending:

> (1)  The United States or any agency thereof
> or any officer (or any person acting under
> that officer) of the United States or of any
> agency thereof, in an official or individual
> capacity, for or relating to any act under
> color of such office or on account of any
> right, title or authority claimed under any
> Act of Congress for the apprehension or
> punishment of criminals or the collection of
> the revenue.

The Ninth Circuit has stated:

> The purpose of the federal officer removal
> statute is "to ensure a federal forum in any case
> where a federal official is entitled to raise a
> defense arising out of his duties." Arizona v.
> Manypenny, 451 U.S. 232, 241, 101 S. Ct. 1657, 68
> L. Ed. 2d 58 (1981). The right of removal is
> "absolute for conduct performed under color of
> federal office," and the "policy favoring removal
> 'should not be frustrated by a narrow, grudging
> interpretation of § 1442(a)(1).'" Id. at 242, 101
> S. Ct. 1657 (quoting Willingham v. Morgan, 395
> U.S. 402, 407, 89 S. Ct. 1813, 23 L. Ed. 2d 396
> (1969)).

> An entity seeking removal under § 1442(a)(1)
> bears the burden of showing "that (a) it is a
> 'person' within the meaning of the statute;
> (b) there is a causal nexus between its actions,
> taken pursuant to a federal officer's directions,
> and plaintiff's claims; and (c) it can assert a
> 'colorable federal defense.'" Durham v. Lockheed
> Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006)
> (quoting Jefferson Cty. v. Acker, 527 U.S. 423,
> 431, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999)).

Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego,

865 F.3d 1237, 1244 (9th Cir. 2017). In performing this

analysis, courts have a "duty to interpret Section 1442 broadly

11

in favor of removal." Id. (citation and internal quotation marks
omitted).

> Removal rights under § 1442 thus "are much
> broader than those under section 1441." Durham,
> 445 F.3d at 1253. For example, "suits against
> federal officers may be removed despite the
> nonfederal cast of the complaint; the federal-
> question element is met if the defense depends on
> federal law." Jefferson County v. Acker, 527 U.S.
> 423, 431, 119 S. Ct. 2069, 144 L. Ed. 2d 408
> (1999). And unlike garden-variety remand orders
> for lack of subject-matter jurisdiction or
> defects in removal procedure, which are not
> appealable, see Kircher v. Putnam Funds Tr., 547
> U.S. 633, 640-41, 126 S. Ct. 2145, 165 L. Ed. 2d
> 92 (2006) (discussing 28 U.S.C. § 1447(d)'s
> general preclusion of appellate review of remand
> orders), when (as here) removal relies on § 1442,
> a remand order for lack of subject-matter
> jurisdiction **is** appealable. See 28 U.S.C.
> § 1447(d).

DeFiore v. SOC LLC, 85 F.4th 546, 554 (9th Cir. 2023) (emphasis
in original).

## DISCUSSION

I.   **Diversity Jurisdiction**

    A.   **Diversity of Citizenship**

         Because Island Palm is an LLC, for purposes of
diversity jurisdiction, it "is a citizen of every state of which
its owners/members are citizens, not the state in which it was
formed or does business." See Voltage Pictures, LLC v. Gussi,
S.A. de C.V., 92 F.4th 815, 822 (9th Cir. 2024) (citation and
quotation marks omitted). AHFH Managing Member LLC is the only
member of Island Palm, and Lendlease (US) Asset Management LLC

is the only member of AHFH Managing Member LLC. The only member
of Lendlease (US) Asset Management LLC is LLG Asset Management
LLC. The only members of LLG Asset Management LLC are Glam
MILHSG Fee LLC and Lendlease Communities Capital LLC. Glam
MILHSG Fee LLC and Lendlease Communities Capital LLC have the
same sole member, Lendlease (US) Public Partnership Holdings
LLC. Lendlease Americas Inc. is the only member of Lendlease
(US) Public Partnerships Holdings LLC. Lendlease Americas Inc.
is a Delaware corporation with its principal place of business
in New York. [Notice of Removal at pgs. 5-6.] Thus, because
Lendlease Americas Inc. is a citizen of Delaware and New York
for purposes of diversity jurisdiction, see 28 U.S.C.
§ 1332(c)(1), this Court concludes that Island Palm is a citizen
of Delaware and New York for purposes of diversity jurisdiction.

    The Complaint does not contain allegations regarding
the Martins' citizenship. The Martins state that, "[a]t all
relevant times, [they] resided in, and paid rent for, a housing
unit in the City & County of Honolulu, Hawai`i." See Complaint
at ¶¶ 5-6. In the Notice of Removal, Island Palm argued the
Martins' citizenship is determined by their domicile and that
the allegations of the Complaint indicated their domicile was
Hawai`i. Island Palm argued it was entitled to rely on the
presumption of continuing domicile, unless there was sufficient
evidence that the Martins' domicile changed. [Notice of Removal

13

at pgs. 6-7 (citing <u>Adams v. W. Marine Products, Inc.</u>, 958 F.3d 1216, 1221 (9th Cir. 2020)).] Even if the Martins' domicile had changed and was not Hawai`i, Island Palm also noted that, "based on [its] own investigation, it appears that [neither of the Martins] reside in, or are citizens of, Delaware or New York." [<u>Id.</u> at pg. 7.]

Martin states that he and Freire vacated the home they leased from Island Palm on January 7 or 8, 2022, and later "left Hawaii for reasons unrelated to the water contamination." [Motion, Declaration of Roman C. Martin ("Martin Decl.") at ¶ 9.] Thus, it appears that, at the time they filed this action, the Martins were neither residents of nor domiciled in Hawai`i, and therefore they were not Hawai`i citizens for purposes of diversity jurisdiction. Moreover, the Motion does not contest Island Palm's assertion that, at the time of removal, there was complete diversity of citizenship between the Martins and Island Palm for purposes of Section 1332(a)(1). <u>See generally</u> Motion, Mem. in Supp. at 5-14 (addressing only the amount in controversy requirement). This Court therefore concludes, for purposes of the instant Motion, that there is complete diversity of citizenship between the Martins and Island Palm.

**B.** **Amount in Controversy**

The issue before this Court in the instant Motion is whether the $75,000 amount in controversy requirement is satisfied.

> [W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court. . . .
>
> If the plaintiff contests the defendant's allegation, [28 U.S.C.] § 1446(c)(2)(B) instructs: "[R]emoval . . . is proper on the basis of an amount in controversy asserted" by the defendant "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. This provision, added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (JVCA), clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied. As the House Judiciary Committee Report on the JVCA observed:
>
> > "[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met. Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies." H. R. Rep. No. 112-10, p. 16 (2011).

Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 87-89 (2014) (some alterations in Dart Cherokee) (footnote omitted).

15

Subsequent Ninth Circuit cases noted that Dart Cherokee did not

establish a rule regarding the **procedure** for the presentation of

evidence associated with a motion for remand. See Dunn, 2021 WL

5122057, at *6 (discussing Ibarra v. Manheim Invs., Inc., 775

F.3d 1193, 1199-1200 (9th Cir. 2015); Salter v. Quality

Carriers, 974 F.3d 959, 964-65 (9th Cir. 2020); and Harris v. KM

Indus., Inc., 980 F.3d 694, 700 (9th Cir. 2020)).

> "Where, as here, it is unclear from the face
> of the complaint whether the amount in
> controversy exceeds $75,000, 'the removing
> defendant bears the burden of establishing, by a
> preponderance of the evidence, that the amount in
> controversy exceeds the jurisdictional
> threshold.'" [Chavez v. JPMorgan Chase & Co, 888
> F.3d 413,] 416 [(9th Cir. 2018)] (quoting Urbino
> v. Orkin Servs. of Cal., Inc., 726 F.3d 1118,
> 1121-22 (9th Cir. 2013)). "The amount in
> controversy may include 'damages (compensatory,
> punitive, or otherwise) and the cost of
> complying with an injunction, as well as attorneys' fees
> awarded under fee shifting statutes.'" Id.
> (quoting Gonzales [v. CarMax Auto Superstores,
> LLC], 840 F.3d [644,] 648-49 [(9th Cir. 2016)]).
> "In assessing the amount in controversy, **we may
> consider allegations in the complaint and in the
> notice of removal, as well as summary-judgment-
> type evidence relevant to the amount in
> controversy**." Id. But "[c]onclusory allegations
> as to the amount in controversy are
> insufficient." Corral v. Select Portfolio
> Servicing, Inc., 878 F.3d 770, 774 (9th Cir.
> 2017) (quoting Matheson v. Progressive Specialty
> Ins. Co., 319 F.3d 1089, 1090-91 (9th Cir.
> 2003)).

Johnson v. Mid-Century Ins. Co., No. 23-35222, 2024 WL 702332,

at *1 (9th Cir. Feb. 21, 2024) (some alterations in Johnson)

(emphasis added). This Court will therefore consider both the

allegations of the Complaint and the evidence presented by the
parties in connection with the instant Motion.

Martin estimates his losses as no more than $12,104.
See Martin Decl. at ¶ 14. This includes: $8,350.60 for rent paid
for the period from November 20, 2021 to February 16, 2021, when
their home was uninhabitable because of the contaminated water;[4]
[id. at ¶ 10;] a lease termination fee of $2,913; [id. at ¶ 11;]
$650 in "relocation expenses in the form of gas and [their] own
vehicle use to travel to and from a government-supplied hotel
facility for showering and to travel to laundry facilities";
[id. at ¶ 12(1);] and $100 for personal items that were rendered
unusable because of the water contamination, [id. at ¶ 12(2)].

> Generally, the claims of multiple plaintiffs may
> not be aggregated for determining the amount in
> controversy. Gibson v. Chrysler Corp., 261 F.3d
> 927, 943 (9th Cir. 2001). There is an exception
> to this rule for plaintiffs who "unite to enforce
> a single title or right in which they have a
> common and undivided interest." Snyder v. Harris,
> 394 U.S. 332, 335 (1969).

Johnson, 2024 WL 702332, at *2. Thus, Martin's claims and
Freire's claims for lost rent and the lease termination fee can
be aggregated in this case because the Martins had "a common and
undivided interest" in those items. See Snyder, 394 U.S. at 335.

---

[4] Martin states they vacated their leased home on January 7
or 8, 2022, but they would have been liable for rent until
February 16, 2022 because they were required to give twenty-
eight days' notice before terminating their lease. [Martin at
¶¶ 9-10.]

17

The Martins estimate the amount at issue in their medical monitoring claim to be no more than $2,000 per person because they argue this claim only seeks "simple measures like annual blood tests," which they estimate will cost $100 per year over a twenty-year period. See Motion, Mem. in Supp. at 9. Further, the Martins state they are not seeking payment for the treatment of any conditions discovered during the monitoring. [Id.] Island Palm argues this grossly underestimates the value of the Martins' medical monitoring claim. [Mem. in Opp. at 7.] However, a plaintiff is the master of his complaint, and he may choose to seek limited relief, even if another similarly situated plaintiff may arguably be able to obtain greater relief. Cf. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." (citation omitted)). This Court therefore accepts the Martins' representation that the amount at issue in their medical monitoring claim is approximately $2,000.

Treble damages are available for the Martins' Chapter 480 claim. See Haw. Rev. Stat. § 480-13(a)(1), (b)(1). This would be approximately $36,042, *i.e.*, three times $12,014.[5] Other claims, such as the Martins' negligence claim, carry the possibility of an award of punitive damages. See Masaki v. Gen. Motors Corp., 71 Haw. 1, 10, 780 P.2d 566, 572 (1989). However, under Hawai`i law, a plaintiff cannot recover both treble damages and punitive damages for claims arising from the same act. Cieri v. Leticia Query Realty, Inc., 80 Hawai`i 54, 69, 905 P.2d 29, 44 (1995) (some alterations in Cieri). This Court therefore rejects Island Palm's argument that both punitive damages and treble damages can be considered in determining the amount in controversy. See Mem. in Opp. at 9-12.

In considering the amount of punitive damages at issue in case, the Martins urge this Court to look to Suzuki v. Helicopter Consultants of Maui, Inc., CV 13-00575 JMS-KJM, which involved a helicopter crash that contaminated the plaintiff's property. The jury in that case awarded $36,050 in compensatory damages and $125,000 in punitive damages, a ratio of 3.47 to 1.

---

[5] If the relocation expenses and loss of personal possessions reflected in the Martin Declaration were total amounts incurred by both Martin and Freire, and the amounts cannot be aggregated, this Court would attribute half of those amounts to Martin, *i.e.*, $325 of the relocation expenses and $50 of the loss of personal possessions. This would reduce Martin's potential damages to $11,639, and the potential treble damages to $34,917.

[Motion, Mem. in Supp. at 11-12 (citing Motion, Declaration of James J. Bickerton ("Bickerton Decl."), Exh. 2 (Special Verdict Form filed in <u>Suzuki</u> on 11/16/16)).] This Court also finds instructive case law addressing the issue of whether an award of punitive damages violates the Fifth Amendment Due Process Clause.

> The Supreme Court has explained that it is "reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." <u>State Farm [Mut. Auto. Ins. Co. v. Campbell]</u>, 538 U.S. [408,] 424, 123 S. Ct. 1513 [(2003)]. But, it has said, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." <u>Id.</u> at 425, 123 S. Ct. 1513. While "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety," these ratios are "instructive" not "binding." <u>Id.</u> Larger ratios are more likely to be warranted when "a particularly egregious act has resulted in only a small amount of economic damages." <u>Id.</u> (internal quotation marks and citation omitted). Conversely, when "compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." <u>Id.</u> In short, the punitive damages must be "reasonable and proportionate" to the harm and compensatory damages. <u>Id.</u>

<u>Diaz v. Tesla, Inc.</u>, 598 F. Supp. 3d 809, 844 (N.D. Cal. 2022). In the Notice of Removal, Island Palm argued "a conservative punitive damages ratio of 4 to 1" should be used to determine the amount in controversy. [Notice of Removal at pg. 10.] Having considered <u>Suzuki</u>, the due process case law, and the

circumstances of this case, this Court concludes that a 4 to 1 ratio is appropriate in evaluating the amount in controversy for purposes of removal jurisdiction. This Court therefore finds that $48,056 in punitive damages ($12,014 times four) is at issue in this case. Martin could potentially recover $12,014 in compensatory damages and $48,056 in punitive damages, or $60,070. Adding the $2,000 for the medical monitoring claim brings the total to $62,070.[6]

Awards of attorneys' fees are potentially available the Martins' breach of contract claims and their Chapter 480 claim. See Haw. Rev. Stat. § 607-14; Haw. Rev. Stat. § 480-13(a)(1), (b)(1). The award of attorneys' fees for the breach of contract claim would be limited to twenty-five percent of the judgment in the breach of contract claim. See § 607-14. Based on the parties' representations, that would appear to be $3,005 for Martin. However, the award for the Chapter 480 claim is limited to "reasonable attorney's fees." See § 480-13(a)(1), (b)(1). The Martins argue, without citing authority, that the benchmark for a reasonable fee under Section 480-13 is twenty-five percent. See, e.g., Motion, Mem. in Supp. at 13. This Court rejects that

---

[6] If this Court considers the reduced relocation expenses and personal possession losses, the potential compensatory damages would be $11,639, the potential punitive damages would be $46,556, plus the $2,000 for medical monitoring, for a total of $60,195.

argument because the Hawai`i Supreme Court has stated, in reviewing the reasonableness of a Section 480-13(b)(1) fee award, that "the amount of fees need not be restricted to the amount of actual damages." Cieri, 80 Hawai`i at 73, 905 P.2d at 48 (citation omitted).

Although Island Palm has not presented any evidence regarding the amount of attorneys' fees at issue in this case, based on this Court's knowledge of the prevailing rates in the legal community and its familiarity with the amount of time involved in the litigation of claims similar to the Martins' claims, this Court finds that more than $13,000 in attorneys' fees is at issue in Martin's Chapter 480 claim.[7] This Court therefore finds that the amount in controversy requirement is met as to Martin's claims in this case, and this Court concludes that Island Palm properly removed this case based on diversity jurisdiction pursuant to Section 1332(a)(1). The Martins' Motion is therefore denied. In light of this ruling, the Martins' challenges to Island Palm's removal based on CAFA and the federal officer removal statute are moot. However, this Court will address those arguments for the sake of completeness.

---

[7] This Court also finds that more than $15,000 in attorneys' fees is at issue in Martin's Chapter 480 claim.

## II.   __CAFA__

Island Palm asserts the proposed Class has over 100
members, the minimal diversity requirement is met, and the
aggregate amount in controversy exceeds $5 million. [Notice of
Removal at pg. 11.] The Martins do not dispute those
representations in the Motion. Thus, only the Martins' argument
that the home state exception applies is at issue. See Motion,
Mem. in Supp. at 14.

> Notwithstanding CAFA's minimal diversity
> requirement, see 28 U.S.C. § 1332(d)(2)(A), there
> are two exceptions to CAFA jurisdiction: "(1) the
> local controversy exception and (2) the home
> state exception." Adams [v. W. Marine Prod.,
> Inc.], 958 F.3d [1216,] 1220 [(9th Cir. 2020)].
> The Ninth Circuit treats these non-jurisdictional
> exceptions as a form of abstention. See id. at
> 1223.

Lethgo v. CP IV Waterfront, LLC, CIVIL NO. 22-00052 JAO-WRP,

2022 WL 2177125, at *6 (D. Hawai`i June 16, 2022).

> "Once CAFA jurisdiction has been
> established, the burden falls on the party
> seeking remand . . . to show that an exception to
> CAFA jurisdiction applies." Adams, 958 F.3d at
> 1221 (citing 28 U.S.C. § 1332(d)(2), (d)(5))
> (other citation omitted). The movant "must
> provide **some** facts in evidence from which the
> district court may make findings regarding class
> members' citizenship" to satisfy this burden. Id.
> (internal quotation marks and citation omitted);
> see also Mondragon v. Cap. One Auto Fin., 736
> F.3d 880, 884 (9th Cir. 2013).

Id. at *7 (alteration and emphasis Lethgo).

Pursuant to the local controversy exception,
"a district court 'shall' decline to exercise

jurisdiction when more than two-thirds of the
putative class members are citizens of the state
where the action was filed, the principal
injuries occurred in that same state, and at
least one significant defendant is a citizen of
that state." [Adams, 958 F.3d] at 1220 (citing 28
U.S.C. § 1332(d)(4)(A)). The home state exception
consists of mandatory and discretionary
components:

> Under the first, the district court "shall"
> decline to exercise jurisdiction where "two-
> thirds or more of the members of all
> proposed plaintiff classes in the aggregate,
> and the primary defendants, are citizens of
> the State in which the action was originally
> filed." 28 U.S.C. § 1332(d)(4)(B) (the
> "mandatory home state exception"). Under the
> second, a district court "may, in the
> interests of justice and looking at the
> totality of the circumstances, decline to
> exercise jurisdiction" when more than one-
> third of the putative class, and the primary
> defendants, are citizens of the state where
> the action was originally filed. 28 U.S.C.
> § 1332(d)(3) (the "discretionary home state
> exception").

Id. . . .

Id.

## A.   **Island Palm's Citizenship**

For purposes of CAFA, "an unincorporated association
[is] deemed to be a citizen of the State where it has its
principal place of business and the State under whose laws it is
organized." 28 U.S.C. § 1332(d)(10). This district court has
stated:

> Although an LLC ordinarily shares the
> citizenships of all of its owners/members in
> diversity cases, see Johnson v. Columbia Props.

24

> Anchorage, LP, 437 F.3d 894, 899, 902 (9th Cir.
> 2006), courts treat LLCs as unincorporated
> associations under CAFA, so they are citizens of
> the states under whose laws they are organized
> and the states where they have their principal
> places of business. See 28 U.S.C. § 1332(d)(10);
> Ramirez v. Carefusion Res., LLC, Case No.: 18-cv-
> 2852-BEN-MSB, 2019 WL 2897902, at *2 (S.D. Cal.
> July 5, 2019) ("In the Ninth Circuit, whether an
> LLC is 'an unincorporated association' for CAFA
> purposes under § 1332(d)(10) remains an open
> question. Nonetheless, the Fourth Circuit" has
> "expressly held that an LLC is properly
> considered an 'unincorporated association' within
> the meaning of § 1332(d)(10)" and "most courts to
> consider the issue have reached the same
> conclusion, finding that § 1332(d)(10) applies to
> all types of non-corporate business entities."
> (citations omitted)); Jack v. Ring LLC, 553 F.
> Supp. 3d 711, 714-16 (N.D. Cal. 2021).

Lethgo, 2022 WL 2177125, at *6.

Interpreting the term "principal place of business" in

Section 1332(c)(1), the United States Supreme Court held:

> the phrase "principal place of business" refers
> to the place where the corporation's high level
> officers direct, control, and coordinate the
> corporation's activities. Lower federal courts
> have often metaphorically called that place the
> corporation's "nerve center." See, e.g.,
> Wisconsin Knife Works v. National Metal Crafters,
> 781 F.2d 1280, 1282 (CA7 1986); Scot Typewriter
> Co. v. Underwood Corp., 170 F. Supp. 862, 865
> (SDNY 1959) (Weinfeld, J.). We believe that the
> "nerve center" will typically be found at a
> corporation's headquarters.

Hertz Corp. v. Friend, 559 U.S. 77, 80-81 (2010). However, the

corporation's headquarters is only the nerve center when it "is

the actual center of direction, control, and coordination, . . .

and not simply an office where the corporation holds its board

meetings (for example, attended by directors and officers who
have traveled there for the occasion)." Id. at 93. Further, the
principal place of business or nerve center is a single place
"**within** a State. It is not the State itself." Id. (emphasis in
original).

In adopting the "nerve center" test, the Supreme Court
recognized that the test

> may in some cases produce results that seem to
> cut against the basic rationale for 28 U.S.C.
> § 1332. For example, if the bulk of a company's
> business activities visible to the public take
> place in New Jersey, while its top officers
> direct those activities just across the river in
> New York, the "principal place of business" is
> New York. One could argue that members of the
> public in New Jersey would be **less** likely to be
> prejudiced against the corporation than persons
> in New York — yet the corporation will still be
> entitled to remove a New Jersey state case to
> federal court. And note too that the same
> corporation would be unable to remove a New York
> state case to federal court, despite the New York
> public's presumed prejudice against the
> corporation.

Id. at 96 (emphasis in original) (citation omitted).

The Martins argue Island Palm only operates in
Hawai`i. [Motion, Mem. in Supp. at 15.] They have submitted
pleadings in other cases in which Island Palm has asserted its
principal place of business is in Hawai`i. See Bickerton Decl.,
Exh. 3 (Complaint, filed in the state court on 4/19/21 in Island
Palm Cmtys., LLC v. Wyche, No. 1CCV-21-0000486) at ¶ 2; id.,
Exh. 4 at PageID.389-406 (Defendant Island Palm Communities

LLC's Answer to Second Amended Complaint, filed in this district court on 6/14/21 in <u>Lobisch et al. v. United States et al.</u>, CV 20-00370 HG-KJM) at ¶ 18. In contrast, Island Palm argues that, for purposes of CAFA, it is a Delaware and Tennessee citizen because it "was formed in the State of Delaware," and its "military housing operations are headquartered in, and run from, the State of Tennessee; this includes its policies, procedures, corporate strategy, and long-term planning." [Notice of Appeal at pg. 14.] Island Palm has not submitted any evidence supporting its position.

There is insufficient evidence in the exiting record for this Court to determine Island Palm's citizenship for purposes of CAFA and the home state exception.

**B.   The Class Members' Citizenship**

The Martins point out that, by definition, all of the proposed Class members were residing in homes in Hawai`i under residential leases with Island Palm between November 20, 2021 and February 16, 2022. [Motion, Mem. in Supp. at 17.] The Martins argue this Court should infer that the Class members' residence in Hawai`i establishes their domicile and their citizenship. [<u>Id.</u> at 17-21.]

Island Palm has presented evidence that there were two Island Palm communities that received contaminated water from the Navy's water system, Red Hill Communities ("RHC") and

27

Aliamanu Military Reservation ("AMR"). [Motion, Declaration of Iris Kirkpilger ("Kirkpilger Decl.") at ¶ 6.[8]] Based on Island Palm's business records, as of December 2, 2021, 99.2% of the 1,619 occupied homes in RHC and AMR combined housed active-duty service personnel, and 0.8% of the homes did not. [Id. at ¶¶ 8-9.] During the relevant period, the Martins resided in RHC, and Freire was an active-duty servicemember at the time. See Martin Decl. at ¶ 4.

> "To be a citizen of a state, a natural person must first be a citizen of the United States . . . . [Her] state citizenship is then determined by her state of domicile[.]" Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). One's domicile is her "permanent home"— that is, where (i) she resides, (ii) "with the intention to remain or to which she intends to return." Id. At minimum, a person's residence constitutes some evidence of domicile. Mondragon, 736 F.3d at 886. "[A] party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." Id. at 885.

Adams, 958 F.3d at 1221 (alterations in Adams). However, for military servicemembers, current residency alone is insufficient to establish domicile. See Sarver v. Chartier, 813 F.3d 891, 898

---

[8] Iris Kirkpilger ("Kirkpilger") is Island Palm's Project Director. [Kirkpilger at ¶ 1.] Kirkpilger's duties include "overseeing the local administrative and operational functions of [Island Palm]," and as Project Director, Kirkpilger has "access to and control over [Island Palm]'s business records." [Id. at ¶¶ 4-5.]

28

(9th Cir. 2016) (citing 13E Charles A. Wright et al., Federal
Practice & Procedure § 3617 (3d ed. 2015) ("Service personnel
are presumed not to acquire a new domicile when they are
stationed in a place pursuant to orders; they retain the
domicile they had at the time of entry into the service.")).

Because over ninety-nine percent of the households
rented by Island Palm during the relevant period housed an
active-duty servicemember, this Court cannot assume that the
proposed Class members' residence in Hawai`i during the relevant
period is proof of their citizenship for purposes of the instant
Motion.

There is insufficient evidence in the exiting record
to determine the proposed Class members' citizenship for
purposes of CAFA and the home state exception.

C.   **Jurisdictional Discovery**

If CAFA was the only arguable basis for this Court's
jurisdiction, this Court would allow the Martins to conduct
jurisdictional discovery regarding Island Palm's citizenship and
the proposed Class members' citizenship. See, e.g., Mondragon,
736 F.3d at 885-86 (vacating the district court's order of
remand and instructing that the plaintiff be allowed "to take
jurisdictional discovery tailored to proving that more than two-
thirds of the putative class are citizens of California").
However, this Court has already ruled that Island Palm properly

removed this case based on diversity jurisdiction under
Section 1332(a)(1). Because removal was proper based on
diversity jurisdiction and CAFA is merely an alternate basis for
removal, this Court finds that allowing the Martins to conduct
jurisdictional discovery would involve unnecessary expense,
burden, and delay. The Martins' request for jurisdictional
discovery is denied.

This Court concludes that there is insufficient
evidence in the record for this Court to determine whether CAFA
jurisdiction exists in this case. That conclusion, however, does
not affect this Court's conclusion that Island Palm properly
removed this case based on diversity jurisdiction under
Section 1332(a)(1).

## III. **<u>Federal Officer Removal</u>**

The first requirement for federal officer removal
jurisdiction is satisfied because Island Palm is a "person" for
purposes of Section 1442(a)(1). <u>See</u> <u>Goncalves</u>, 865 F.3d at 1244.

The second requirement - causal nexus - can be
established through a showing that: 1) the party's actions at
issue in the case were "'actions under' a federal officer"; and
2) there was a causal connection between those actions and the
plaintiff's claims. <u>Id.</u> (citing <u>Durham</u>, 445 F.3d at 1251).

> [T]he "hurdle erected by [the causal-connection]
> requirement is quite low." <u>Isaacson [v. Dow Chem.
> Co.]</u>, 517 F.3d [129,] 137 [(2d Cir. 2008)]; <u>see</u>

also <u>Maryland v. Soper</u>, 270 U.S. 9, 33, 46 S. Ct.
185, 70 L. Ed. 449 (1926) ("[T]he statute does
not require that the prosecution must be for the
very acts which the officer admits to have been
done by him under federal authority. It is enough
that his acts or his presence at the place in
performance of his official duty constitute the
basis, though mistaken or false, of the state
prosecution."). The [defendants] need show only
that the challenged acts "occurred because of
what they were asked to do by the Government."
<u>Isaacson</u>, 517 F.3d at 137. . . .

    . . . Although the federal officer removal
statute is not limitless, "[t]he words 'acting
under' are broad," and the Supreme Court "has
made clear that the statute must be 'liberally
construed.'" <u>Watson [v. Philip Morris Cos.]</u>, 551
U.S. [142,] 147, 127 S. Ct. 2301 [(2007)]
(quoting <u>Colorado v. Symes</u>, 286 U.S. 510, 517, 52
S. Ct. 635, 76 L. Ed. 1253 (1932)). For a private
entity to be "acting under" a federal officer,
the private entity must be involved in "an effort
to assist, or to help carry out, the duties or
tasks of the federal superior." <u>Id.</u> at 152, 127
S. Ct. 2301. The "relationship typically involves
'subjection, guidance, or control,'" but it must
go beyond simply complying with the law, even if
the laws are "highly detailed" and thus leave the
entity "highly regulated." <u>Id.</u> at 151-53, 127 S.
Ct. 2301 (citation omitted). Thus, "[t]he
assistance that private contractors provide
federal officers [must go] beyond simple
compliance with the law and help[] officers
fulfill other basic governmental tasks." <u>Id.</u> at
153, 127 S. Ct. 2301.

<u>Id.</u> at 1244-45 (some alterations in <u>Goncalves</u>).

    The required causal nexus can also be established by

showing that the defendant's actions were connected to or

associated with acts under color of a federal office. <u>DeFiore</u>,

85 F.4th at 557 n.6. In <u>DeFiore</u>, the Ninth Circuit stated:

> We note that in 2011 Congress amended
> § 1442(a)(1) to allow removal by federal officers
> (and persons acting under them) of suits "for or
> relating to any act under color of such
> office . . . ." 28 U.S.C. § 1442(a)(1); see
> Removal Clarification Act of 2011, Pub. L.
> No. 112-51, § 2(b)(1)(A), 125 Stat. 545.
> Previously, the statute allowed for removal of
> suits "for any act under color of such office."
> By so amending the statute, "Congress broadened
> federal officer removal to actions, not just
> **causally** connected, but alternatively **connected**
> or **associated**, with acts under color of federal
> office." Latiolais v. Huntington Ingalls, Inc.,
> 951 F.3d 286, 292 (5th Cir. 2020) (en banc)
> (emphasis in original); cf. Morales v. Trans
> World Airlines, Inc., 504 U.S. 374, 383, 112 S.
> Ct. 2031, 119 L. Ed. 2d 157 (1992) (stating that
> the "ordinary meaning" of "relating to" "is a
> broad one — 'to stand in some relation; to have
> bearing or concern; to pertain; refer; to bring
> into association with or connection with'")
> (quoting *Black's Law Dictionary* 1158 (5th ed.
> 1979)). We read our "causal nexus" test as
> incorporating the "connected or associated with"
> standard reflected in Congress's 2011 amendment
> and the Supreme Court's decisions. See Goncalves,
> 865 F.3d at 1244-45.

Id. (emphases in DeFiore).

Island Palm argues a causal nexus exists because the

federal government leases land to Island Palm, and Island Palm

is required to obtain water for the leased land from the Navy.

Island Palm's tenants are military personnel and their families,

and therefore Island Palm argues it assists or helps the federal

government by providing housing to those persons. According to

Island Palm, there is a causal nexus between that assistance and

the Martins' claims because the Martins allege they were injured

because of the contaminated water that Island Palm obtained from the Navy's water system, and the contamination originated from Red Hill, a Navy facility. [Mem. in Opp. at 21-23.] This Court rejects Island Palm's argument because Island Palm has failed to present any evidence showing the requisite "subjection, guidance, or control" by a federal officer. See Watson, 551 U.S.at 151 (citation and quotation marks omitted).

In light of Island Palm's failure to establish the causal nexus requirement, it is not necessary to address the colorable defense requirement. This Court concludes that Island Palm improperly removed this case based on federal officer removal jurisdiction. However, remand is not required because the case was properly removed based on diversity jurisdiction pursuant to Section 1332(a)(1).

## CONCLUSION

For the foregoing reasons, the Martins' Motion for an Order of Remand, filed February 5, 2024, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 20, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

ROMAN C. MARTIN, ET AL. VS. ISLAND PALM COMMUNITIES, LLC; CV 24-
00006 LEK-KJM; ORDER DENYING PLAINTIFFS' MOTION FOR AN ORDER OF
REMAND