UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| ROMAN C. MARTIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; AND DANIELLE M. FREIRE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;<br><br>        Plaintiffs,<br><br>    vs.<br><br>ISLAND PALM COMMUNITIES, LLC, DOE DEFENDANTS 1-20,<br><br>        Defendants. | CIV. NO. 24-00006 LEK-KJM |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS
OR STAY PLAINTIFFS' CLAIMS, FILED NOVEMBER 17, 2023**

Before the Court is Defendant Island Palm Communities, LLC's ("Island Palm") Motion to Compel Arbitration and to Dismiss or Stay Plaintiffs' Claims, Filed November 17, 2023 ("Motion"), filed on January 24, 2024. [Dkt. no. 7.] Plaintiffs Roman C. Martin and Danielle M. Freire, individually and on behalf of all other similarly situated ("the Martins") filed their memorandum in opposition on February 9, 2024, and Island Palm filed its reply on June 7, 2024. [Dkt. nos. 12, 26.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii

("Local Rules"). Island Palm's Motion is hereby granted insofar as the Martins are ordered to arbitrate their individual claims, and all claims in this case are stayed. The Motion is denied as to Island Palm's request for dismissal.

## BACKGROUND

The Martins filed a complaint in the State of Hawai`i Circuit Court of the First Circuit ("state court") on November 17, 2023, and the case was removed to this district court on January 4, 2024. [Notice of Removal, filed 1/4/24 (dkt. no. 1), Exh. A (Complaint).] Island Palm argued jurisdiction exists pursuant to Title 28 United States Code Section 1332(a) and the Class Action Fairness Act of 2005 ("CAFA"), Title 28 United States Code Section 1332(d). [Notice of Removal at pg. 3, § III.] On February 5, 2024, the Martins filed a Motion for an Order of Remand, [dkt. no. 11,] and that motion was denied in an order filed on May 20, 2024. [Dkt. no. 21.[1]]

## I.   Relevant Allegations of the Complaint

The Martins resided in a rental housing unit that "was owned, operated, managed and/or leased by" Island Palm. [Complaint at ¶¶ 5-6.] Island Palm "manage[s] and lease[s] residential housing in the City & County of Honolulu, Hawai`i

---

[1] The May 20, 2024 order is also available at 2024 WL 2272718.

2

pursuant to agreements with" the United States Department of the Navy ("the Navy"). [Id. at ¶ 31.] These agreements are part of

> a public-private venture to make productive use of residential housing previously utilized as a military housing community. Under the public-private venture, federal lands are leased to Defendants who then lease residences to private consumers, including the Plaintiffs. The public-private venture also includes the sourcing of potable water sources from a Navy-operated water system to Defendants' control.

[Id. at ¶ 32.] Under the leases, Island Palm had a duty to provide potable water to its tenants, and the tenants had the duty to pay for the utilities included with their homes. [Id. at ¶¶ 33-34.]

The Martins argue fuel spills and/or leaks at the Red Hill Bulk Fuel Storage Facility ("Red Hill"), which is owned and operated by the Navy, contaminated the water that Island Palm sold to them as part of the utilities included in the lease of their home. See id. at ¶ 4. The Martins allege that, because of the contamination of the water, they "have been constructively evicted from their homes, had personal property contaminated and ruined, and/or suffered physical harm due to exposure to contaminated water." [Id.]

On November 20, 2021, the Navy reported that almost 14,000 gallons of a mixture of fuel and water were released from Red Hill's fire suppression system. [Id. at ¶ 26.] The State of Hawai`i Department of Health ("DOH") found that "the November

2021 fuel release 'caused the Red Hill Shaft, a drinking-water source for the U.S. military, to be seriously contaminated with fuel.'" [Id. at ¶ 26 & n.19 (emphasis omitted) (quoting DOH Hearing's Officer's Proposed Decision and Order, Findings of Fact, and Conclusions of Law, dated 12/27/21 ("12/27/21 DOH FOF/COL") at ¶ 36).[2]] The DOH found that "'[t]he water contamination was widespread and not unique to any one person.'" [Id. at ¶ 27.a & n.21 (quoting 12/27/21 DOH FOF/COL at ¶ 41).] In response to the November 2021 fuel release, the Red Hill Shaft, all tanks at Red Hill, the `Aiea-Hālawa Shaft, and three City and County of Honolulu Board of Water Supply wells were shut down. [Id. at ¶ 29.]

The Martins argue that, because of prior fuel leaks/releases at Red Hill and because of Island Palm's relationship with the Navy, Island Palm knew or should have known about the risk of contamination to the water that Island Palm provided to the Martins under their lease. Further, Island

---

[2] The 12/27/21 DOH FOF/COL was issued in the contested case brought by the Navy to challenge portions of DOH's December 6, 2021 emergency order. The proposed decision and order was adopted, as amended, as DOH's final decision and order. See Wai Ola Alliance, et al. v. U.S. Dep't of the Navy, et al., CV 22-00272 LEK-RT ("Wai Ola"), Amended Unopposed Request for Judicial Notice in Support of Motion to Dismiss or, in the Alternative, Stay Proceedings (ECF No. 90), filed 12/7/23 (dkt. no. 102), Exh. D (12/6/21 emergency order), Exh. E (DOH final decision and order); Wai Ola, the plaintiffs' request for judicial notice, filed 12/22/23 (dkt. no. 108), Exh. A (12/27/21 DOH FOF/COL).

Palm failed to warn the Martins about the risk that fuel leaks contaminated the water provided their homes. Island Palm did not test the water it provided to the Martins to determine whether the water needed to be treated and/or replaced. Even after the November 2021 fuel spill, Island Palm failed to warn its tenants in a timely manner, which resulted in the Martins using and drinking the contaminated water. [Id. at ¶¶ 36-37.] The Martins allege the water crisis is ongoing because the water is still being tested to determine if it is safe for human consumption. [Id. at ¶ 38.] The Martins allege that, as a result of Island Palm's conduct, they "suffered economic injury and damages, including but not limited to lease termination fees, relocation expenses, rent, and the loss of personal possessions." [Id. at ¶ 41.] In addition, the Martins allege their damages "include but are not limited to overpayment for rent, real estate sales commissions, renter's insurance policies, personal injuries not requiring medical intervention, damage to personal property, and property management and maintenance services." Id. at ¶ 53; see also id. at ¶¶ 100, 112 (similar).

The Martins are attempting to pursue their case as a class action brought on behalf of:

> All persons who, on or after November 20, 2021, reside or have resided in a housing unit entitled to receive uncontaminated potable water sold or distributed by Defendants in housing units owned, leased or operated by Island Palm and who, for

some period of time since November 20, 2021, did
not receive such uncontaminated potable water
[("the Class")].

[Id. at ¶ 11.] The Class does not include "[i]ndividuals

suffering from physical injuries severe enough to require

professional medical assistance." [Id.] The Martins also propose

a subclass consisting of: "All persons in the above Class who

entered a lease contract with Defendant Island Palm, and/or made

payments for or towards lease rent on a housing unit entitled to

receive uncontaminated potable water sold or distributed by

Defendant Island Palm [('the Subclass')]." [Id. at ¶ 12.]

The Martins allege the requirements of numerosity,

commonality, typicality, and adequacy are met as to the Class

and the Subclass. [Id. at ¶¶ 13-16.] They also allege Island

Palm's conduct is generally applicable to the Class, and the

common issues related to liability and causation dominate over

the individual issues of extent of economic harm. [Id. at ¶¶ 17-

19.]

The Martins assert the following claims on behalf of

the Class, unless stated below: negligence ("Count I"); strict

liability ("Count II"); a claim alleging Island Palm has a duty

to provide medical monitoring for conditions that may develop

because of the contaminated water ("Count III"); private

nuisance ("Count IV"); an unfair and deceptive trade practices

claim by the Subclass, pursuant to Hawai`i Revised Statutes

6

Section 480-2 ("Count V"); a breach of the implied warranty of habitability claim by the Subclass ("Count VI"); a trespass claim by the Subclass ("Count VII"); a breach of contract claim by the Subclass ("Count VIII"); and a claim by the Subclass alleging violations of the Landlord Tenant Code, Hawai`i Revised Statutes Chapter 521 ("Count XI"). [Id. at pgs. 16-29.] The Martins seek: certification of the Class and the Subclass; general, special, and consequential damages, as well as treble and punitive damages; a medical monitoring program; attorney's fees and costs; disgorgement of profits; prejudgment interest; injunctive relief; and any other appropriate relief. [Id. at pgs. 30-31.]

## II.   **The Instant Motion**

Island Palm argues the Martins' lease contains a provision making mediation and/or arbitration mandatory, and the Martins have not complied with that provision. Further, because the provision does not mention class arbitration, the Martins cannot pursue class claims in the arbitration. Island Palm therefore argues this Court should compel the Martins to arbitrate their individual claims. [Motion, Mem. in Supp. at 1.]

Danielle Freire entered into a Residential Lease Agreement with Island Palm for a term from November 18, 2020 for twelve months, continuing on a month-to-month basis thereafter ("Lease"). [Motion, Declaration of Phillip Carpenter ("Carpenter

7

Decl."),[3] Exh. B (Lease).] Roman Martin was identified as an
authorized occupant of the leased premises. [Id. at PageID.139.]
The Lease states:

> All disputes between the parties of this
> Agreement shall be resolved by mediation and/or
> binding arbitration in accordance with the terms
> and provisions of the Resident Guide. The
> prevailing party in binding arbitration and/or
> other legal process shall be entitled to recover
> its reasonable attorneys' fees and costs incurred
> in relation to the dispute from the non-
> prevailing party.

[Id. at PageID.143, § 17.]

Island Palm argues that, because the Lease does not
reference state law, there is a strong presumption that the
Federal Arbitration Act ("FAA") applies to the arbitration
agreement and to any arbitration conducted pursuant thereto.
Even without the presumption, the FAA would still apply because
it preempts contrary state arbitration law. Thus, Island Palm
contends this Court must apply the FAA and must determine
whether there was a valid arbitration agreement and whether the
dispute falls within the scope of the agreement. [Motion, Mem.
in Supp. at 4-5.] Island Palm argues this case is covered by an
unambiguous, enforceable agreement to arbitrate or mediate, and
therefore this Court should dismiss the Martins' claims or stay

---

[3] Phillip Carpenter ("Carpenter") is the Chief Operating
Officer of Lendlease (US) Public Partnerships Holdings LLC
("Lendlease"), which is a minority owner of Island Palm.
[Carpenter Decl. at ¶¶ 1, 5.]

the case. [Id. at 8.] Island Palm subsequently acknowledged

that, under Smith v. Spizzirri, 601 U.S. 472, 144 S. Ct. 1173

(2024), a district court is required to stay claims that it

compels be arbitrated. Island Palm therefore amends its request

in the Motion and asks that this Court compel the arbitration of

the Martins' individual, non-class claims and stay the

corresponding claims in this case. However, Island Palm argues

the Martins' class claims must be dismissed because there is no

class representative. [Reply at 1 n.1.]

**STANDARD**

Title 9 United States Code Section 2 states:

> A written provision in any maritime transaction
> or a contract evidencing **a transaction involving**
> **commerce** to settle by arbitration a controversy
> thereafter arising out of such contract or
> transaction, or the refusal to perform the whole
> or any part thereof, or an agreement in writing
> to submit to arbitration an existing controversy
> arising out of such a contract, transaction, or
> refusal, shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at
> law or in equity for the revocation of any
> contract or as otherwise provided in chapter 4.

(Emphasis added.) The term "involving commerce" is interpreted

broadly.

Title 9 United States Code Section 2 states:
The Supreme Court considered the scope of
Section 2 in Allied-Bruce Terminix Cos. v.
Dobson, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed.
2d 753 (1995). The Court had previously concluded
that the FAA preempts state law, and in Allied-
Bruce it considered the breadth of the FAA's
reach, as set forth in Section 2. Id. at 272-73,
115 S. Ct. 834. The Court examined the phrase "a

9

contract evidencing a transaction involving commerce" in two steps. First, the Court noted that the words "'involving commerce' . . . are broader than the often-found words of art 'in commerce.'" <u>Id.</u> at 273, 115 S. Ct. 834. The Court held that the phrase "involving commerce" is "the functional equivalent of" the phrase "affecting commerce," which "normally signals Congress' intent to exercise its Commerce Clause powers to the full." <u>Id.</u> at 273-74, 115 S. Ct. 834. Second, the Court considered the language "evidencing a transaction" involving commerce. <u>Id.</u> at 277, 115 S. Ct. 834. The Court read this phrase broadly, holding that the transaction must involve interstate commerce, but that the parties to the transaction need not have contemplated that the transaction had an interstate commerce connection. <u>Id.</u> at 281, 115 S. Ct. 834.

The Court noted in passing in <u>Allied-Bruce</u> that Section 1 of the FAA "defin[ed] the word 'commerce' in the language of the Commerce Clause itself." 513 U.S. at 274, 115 S. Ct. 834; <u>see</u> 9 U.S.C. § 1 ("'[C]ommerce', as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation[.]").

<u>Rogers v. Royal Caribbean Cruise Line</u>, 547 F.3d 1148, 1154 (9th Cir. 2008) (alterations in <u>Rogers</u>).

If the FAA applies to an arbitration agreement, this Court determines whether an issue is arbitrable

"by applying the federal substantive law of arbitrability,' <u>Mitsubishi Motors [Corp. v. Soler Chrysler-Plymouth, Inc.]</u>, 473 U.S. [614,] 626, 105 S. Ct. 3346 [(1985,)] "absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law." <u>Cape</u>

> *Flattery* [Ltd. v. Titan Maritime, LLC], 647 F.3d
> [914,] 921 [(9th Cir. 2011)] (internal quotation
> marks omitted).

*Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (some

brackets omitted).

## **DISCUSSION**

## I.   **Whether the FAA Applies**

This Court first turns to the Martins' arguments that

Island Palm has not shown the Lease is "'a contract evidencing a

transaction involving [interstate] commerce,'" [Mem. in Opp. at

1 n.1 (alteration in Mem. in Opp.) (quoting 9 U.S.C. § 2),] and

that the FAA does not apply to a residential lease, [id. at 1-2

n.1 (citing cases)]. The Martins' argument that the FAA does not

apply to residential leases is based upon cases involving

discrete real estate transactions. However, these cases are

distinguishable because Island Palm manages over a thousand

units. See Notice of Removal at pg. 13 (stating there were

"approximately 1,662 units" in the community managed by Island

Palm "that were allegedly impacted by the Navy's contaminated

water"). Further, as noted *supra*, "a transaction involving

commerce" is interpreted broadly. See *Allied-Bruce*, 513 U.S. at

273-74, 281. This Court rejects the Martins' argument for the

reasons set forth in the order compelling the plaintiffs to

arbitrate their individual claims in *Jabour et al. v. Hickam*

*Communities, LLC*, CV 24-00001 LEK-KJM ("*Jabour*"). See *Jabour*,

Order Granting in Part and Denying in Part Defendant's Motion to Compel Arbitration and to Dismiss or Stay Plaintiffs' Claims, Filed November 17, 2023, filed 9/20/24 (dkt. no. 30) ("Jabour 9/20 Order"), at 11-14. This Court therefore concludes that the FAA applies to the Lease between Freire and Island Palm because it is "a contract evidencing a transaction involving commerce."

## II.  **Whether There Is an Arbitrable Claim**

Because the FAA applies to the Lease, this Court determines whether an issue is arbitrable "'by applying the federal substantive law of arbitrability,' Mitsubishi Motors, 473 U.S. at 626, 105 S. Ct. 3346 absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law." Brennan, 796 F.3d at 1129 (some citations and internal quotation marks omitted).

The arbitration provision in the Lease does not reference Hawai`i law. However, the relevant provision in the Island Palm Resident Guide, which is referred to in the Lease, states:

> **1.19 Dispute Resolution Procedure**
>
> Island Palm Communities desires to work out any disputes with residents amicably and to a satisfactory resolution for both parties. However, if this is not possible, Island Palm Communities may use all options described in Section 1.10 to settle disputes. If this fails, Island Palm Communities or the resident has the option to choose binding arbitration using the

12

most recent standards provided by **the State of Hawaii Dispute Resolution process**.

Island Palm Communities requires that residents live amicably within its communities. Residents and their guests shall respect the quiet use and enjoyment of other residents. In the event a resident dispute should arise, residents are encouraged to solicit Command involvement. Requests for resident moves will not be entertained as a result of resident disputes. Island Palm Communities will engage the Service Member's chain of Command, Installation's Community Compliance Section or the Garrison Commander's office to resolve issues between parties. Island Palm Communities reserves the right to terminate all parties for continued disputes that substantially interfere with the right to quiet enjoyment of other residents in the community.

[Carpenter Decl., Exh. C (Island Palm Resident Guide & Community Standards Handbook), effective 9/24/19 ("Resident Guide")) at PageID.191 (first emphasis in original) (second emphasis added).] Section 1.10 of the Resident Guide refers to "various remedies, including reports to Command, fees to bring the home into compliance, fines, or possible eviction," as well as referral of debts to a debt collection process or a collection agency. [Id. at PageID.183.]

The Martins filed a notice of supplemental authority citing Green Global Communities, Inc. v. Neighborhood Power Corp., No. CAAP-18-0000082, 2024 WL 862924 (Hawai`i Ct. App. Feb. 29, 2024), for its holding that an arbitration provision that stated arbitration would be conducted under the rules of

the County of Maui was unenforceable because such rules did not exist. See Plaintiffs' LR 7.6 Notice of Supplemental Authority, filed 5/7/24 (dkt. no. 19), at 2. The Martins argue this Court should follow Green Global because the Resident Guide noted the parties had the option arbitrate under "the State of Hawaii Dispute Resolution process," but no such process exists. [Id. at 2-3.]

The Resident Guide's reference to "the State of Hawaii Dispute Resolution process" is puzzling, but it is not fatal. In Green Global, the reference to the nonexistent "rules of the county of Maui" was contained in the arbitration clause itself. See 2024 WL 862924, at *1. Thus, "the parties made conducting the arbitration 'under the rules of the county of Maui' an integral part of their agreement." Id. In contrast, the reference to "the State of Hawaii Dispute Resolution process" in the Resident Guide is not an integral part of the arbitration agreement because it is not contained in the arbitration provision itself. This Court therefore rejects the Martins' argument that the reference to "the State of Hawaii Dispute Resolution process" in the Resident Guide renders the arbitration provision in the Lease unenforceable. Further, because the State of Hawaii Dispute Resolution process does not exist, the reference cannot constitute "clear and unmistakable evidence that the parties agreed to apply non-federal

14

arbitrability law." <u>See</u> <u>Brennan</u>, 796 F.3d at 1129. Federal law is therefore applicable. The applicable principles under federal are described in the <u>Jabour</u> 9/20 Order, and the same principles are applied here. <u>See</u> <u>Jabour</u> 9/20 Order at 15-16 (quoting <u>Loftus</u> <u>v. H&R Block</u>, CIV. NO. 20-00568 JMS-KJM, 2021 WL 4437491, at *1-2 (D. Hawai`i Sept. 27, 2021)).

In the instant case, the Lease is in writing. It unambiguously states all disputes between the parties to the lease "shall be resolved by mediation and/or binding arbitration." <u>See</u> Carpenter Decl., Exh. B (Lease) at PageID.143, § 17. For the reasons stated in the <u>Jabour</u> 9/20 Order, the fact that the Lease refers to "mediation and/or binding arbitration" does not mean a lack of intent to submit to arbitration,[4] and section 17 evinces an agreement on the essential terms. <u>See</u> <u>Jabour</u> 9/20 Order at 17-19.

Further, bilateral consideration exists because both parties agree to submit to mediation and/or arbitration. However, the Martins argue that the Lease references remedies that constitute Island Palm's reservation of its right to seek

---

[4] The Martins raise their ambiguity argument in the context of their position that the arbitration agreement is unenforceable and should be invalidated. <u>See</u> Mem. in Opp. at 5-11. However, their ambiguity argument is more appropriately addressed in the context of the issue of whether the contract is ambiguous as to whether the parties intended to submit to arbitration.

judicial remedies, rendering Island Palm's agreement to forgo
judicial remedies illusory. See Mem. in Opp. at 9-11. The
references that the Martins rely upon include:

- the Mold & Mildew Addendum, which states: "A default under the
  terms of this Addendum shall be deemed a material default
  under the terms of the [Residential Leasing Agreement], and
  Landlord shall be entitled to exercise all rights and
  remedies at law or in equity." [Carpenter Decl., Exh. B
  (Lease) at PageID.147 (second page of Mold & Mildew
  Addendum), Violation Addendum;]

- multiple reservations of Island Palm's right to seek eviction;
  [id. at PageID.139, § 1; PageID.141, § 3(b); PageID.142,
  §§ 6, 7(a), 7(c), 9, 11; PageID.143, §§ 12, 13;
  PageID.160;]

- Island Palm's reservation of rights to assert claims for
  monetary damages; [id. at PageID.142, §§ 9, 10;]

- its reservation of rights to recover costs; [id. at PageID.142,
  § 12;] and

- its reservation of rights to pursue a "suit brought against
  Resident in court to collect the debt" for items
  "including, but not limited to, rent, utilities, and
  damages to the Premises, which are not paid within 30 days
  of the date due," [id. at PageID.142, § 5].

The plaintiffs in Jabour raised the same argument, relying on
the same or comparable provisions. This argument was rejected
because the lease evidenced an unambiguous intent to submit
disputes to arbitration or mediation and was supported by
bilateral consideration. See Jabour 9/20 Order at 19-22. Based
on the analysis set forth in Jabour, although admittedly it is a
close question, the Martins' Lease evidences an unambiguous
intent to submit disputes to arbitration or mediation and is

supported by bilateral consideration. See Douglass v. Pflueger Haw., Inc., 110 Hawai`i 520, 531, 135 P.3d 129, 140 (2006). Thus, an enforceable arbitration agreement exists unless the Martins establish a contract defense invalidating the arbitration agreement. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011).

## III. **Unconscionability**

The Martins argue the arbitration provision is unenforceable because it is procedurally and substantively unconscionable. [Mem. in Opp. at 13-15.] The applicable principles regarding unconscionability are described in the Jabour 9/20 Order, and the same principles are applied here. See Jabour 9/20 Order at 22-24 (quoting Narayan v. The Ritz-Carlton Dev. Co., 140 Hawai`i 343, 350-52, 400 P.3d 544, 551-53 (2017)).

### A.    **Procedural Unconscionability**

In the instant case, Island Palm had greater bargaining power, and the Lease is a form document. The Martins state they believed that they had no choice but to accept the offered lease on a take-it-or-leave-it basis. See Mem. in Opp., Declaration of Danielle M. Freire ("Freire Decl.") at ¶ 11 ("Because housing is essential but in short supply in Hawaii, and [Island Palm] controls a large amount of housing, I didn't feel I had any meaningful choice but to accept [Island Palm]'s take it or leave it terms if I wanted housing."). The Martins

17

also complain that the Lease and other papers that came with the Lease were confusing because of the multiple parts and overall length. [Id. at ¶ 6.] However, the main Lease document is less than ten pages long, and the dispute provision is in a separate section that is clearly numbered and titled. See Carpenter Decl., Exh. B (Lease) at PageID.138-45. The arbitration provision of the Lease does not present the type of unfair surprise necessary to establish procedural unconscionability. See, e.g., Narayan, 140 Hawai`i at 351, 400 P.3d at 552. Thus, the Martins have failed to prove procedural unconscionability.

      B.    **Substantive Unconscionability**

      The Martins argue the arbitration provision is substantively unconscionable because Island Palm reserved the right to pursue judicial remedies and because the Martins may have to pay costs in arbitration that they would not have been required to pay in a judicial action. [Mem. in Opp. at 14.] As stated supra, it is a close question whether Island Palm impermissibly reserved judicial remedies for itself. Accord Jabour 9/20 Order at 26. However, because any such provisions are severable from the arbitration provision, these provisions do not warrant a finding of substantive unconscionability.

      As to their costs of arbitration argument, the Martins assert that: "Forcing costs of arbitration on a party when it would be prohibitively expensive for that party, such as the

arbitration provisions here attempt to do, is sufficient reason alone to hold the arbitration agreement unconscionable as impermissibly one-sided." [Mem. in Opp. at 14-15 (citing <u>Gabriel v. Island Pac. Acad., Inc.</u>, 140 Haw. 325, 338, 400 P.3d 526, 539 (2017)).] The plaintiffs in <u>Jabour</u> raised the same argument, and this Court rejected it. <u>See</u> <u>Jabour</u> 9/20 Order at 26-28. For the same reasons stated in <u>Jabour</u>, the instant case, which does not present circumstances comparable to the facts in <u>Gabriel</u>, is clearly distinguishable and thus <u>Gabriel</u> does not apply.

On balance, based on the facts presented, the terms of the arbitration provision in the Lease are not so one-sided as to be substantively unconscionable. Because the Martins have failed to establish a defense to the enforceability of the arbitration provision, this Court concludes that the arbitration provision is valid and enforceable.

## IV.   **Other Authorized Occupants**

The Lease is between Danielle Freire as the "Resident" and Island Palm; and Roman Martin is an authorized occupant as her spouse. <u>See</u> Carpenter Decl., Exh. B (Lease) at PageID.138-39. To the extent that the Martins argue Roman Martin is not bound by the arbitration provision because he is not a party to the Lease, that argument is rejected.

The Lease states: "Resident agrees and acknowledges that the spouse and any other authorized occupant listed in

Section 2 has no independent or separate right under this Lease to occupy the Premises." [Id. at PageID.139, § 1.] Any rights that Roman Martin had arising from his occupancy of the Premises were dependent upon Danielle Freire's rights under the Lease. Further, "[w]hile the FAA requires a writing, it does not require that the writing be signed by the parties." Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1439 (9th Cir. 1994) (citation and internal quotation marks omitted). In short, although Roman Martin did not sign the Lease as a Resident, he is bound by the arbitration provision in the Lease.

Island Palm's Motion is granted insofar as the Martins are required to arbitrate their individual claims. The Martins' individual claims are stayed, pending the outcome of the arbitration. See 9 U.S.C. § 3; Smith v. Spizzirri, 601 U.S. 472, 478, 144 S. Ct. 1173, 1178 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").[5]

**V.   Class Claims**

Island Palm does not seek to compel arbitration of the class claims because the arbitration provision in the Lease is

---

[5] Section 3 contains an exception when the party seeking a stay is default in the arbitration proceeding, but there is no indication that this exception applies under the circumstances of this case.

silent as to class arbitration. <u>See</u> <u>Lamps Plus, Inc. v. Varela</u>, 587 U.S. 176, 178-79 (2019). However, Island Palm argues in its reply that the class claims should be dismissed because the Martins cannot be class representatives. <u>See</u> Reply at 13-14. Because this is a new request that was not raised in the Motion, this Court will not address it. <u>Cf.</u> Local Rule LR7.2 ("Any argument raised for the first time in the reply shall be disregarded.").

The class claims in the Complaint are stayed because the outcome of the arbitration will affect the litigation of the class claims.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, Island Palm's January 24, 2024 Motion to Compel Arbitration and to Dismiss or Stay Plaintiffs' Claims, Filed November 17, 2023, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as: the Martins are ORDERED to arbitrate their individual claims; and the Martins' individual claims and class claims are STAYED pending the outcome of the arbitration. Island Palm's Motion is DENIED as to its request for dismissal.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 23, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

ROMAN C. MARTIN, ETC. ET AL. VS. ISLAND PALM COMMUNITIES, LLC, ET AL; CV 24-00006 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PLAINTIFFS' CLAIMS, FILED NOVEMBER 17, 2023